# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. C., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-5422 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| LELAND DUDEK, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael A. C. seeks to overturn the final decision of the Acting
Commissioner of Social Security ("Commissioner") denying his applications for
Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")
under Titles II and XVI of the Social Security Act. The parties consented to the
jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c),
and plaintiff filed a brief explaining why the Commissioner's decision should be
reversed and the case remanded. The Commissioner responded with a competing
motion for summary judgment in support of affirming the decision. After review of
the record and the parties' respective arguments, the Court grants the
Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI on September 9, 2015 alleging
disability since December 26, 2014 due to a broken back, pain in both knees, back

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025.
He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

pain, left wrist pain, right shoulder pain, and anxiety. Administrative Record ("R.")
201-04, 232. Born in July 1981, plaintiff was 33 years old as of the alleged onset
date, making him at all times a younger person (under age 50). 20 C.F.R. §
404.1563(c); 20 C.F.R. § 416.963(c). In 2003, plaintiff fractured his spine in a motor
vehicle accident. R. 44. He continued working for many years as a bartender,
baseball umpire, maintenance worker, and salesman, but he quit in December 2014
due to his conditions and has not engaged in substantial gainful activity since that
date. R. 232-33.

The Social Security Administration denied plaintiff's applications at all levels
of review and he filed a timely appeal with the district court. R. 581-83. On May 15,
2020, the court remanded the case for further proceedings, with instructions to:
determine the proper weight to assign to the opinion from plaintiff's treating family
practitioner, S. David Demorest, M.D.; and reassess plaintiff's residual functional
capacity ("RFC") considering all relevant medical evidence, including plaintiff's
reasons for not obtaining specialized treatment. R. 592-609. *See also Michael C. v.
Saul*, No. 19 C 2173, 2020 WL 2526481 (N.D. Ill. May 15, 2020). On July 15, 2020,
the Appeals Council vacated the final decision of the Commissioner and remanded
the case to an administrative law judge (the "ALJ") to take further action needed to
complete the administrative record and issue a new decision. R. 612.

The ALJ held a supplemental hearing on November 30, 2021 and heard
testimony from plaintiff, who was represented by counsel, and from vocational

expert ("VE") Susan Entenberg.[2] R. 510-55. On May 31, 2022, the ALJ determined that plaintiff's major depressive disorder with psychotic symptoms and generalized anxiety disorder are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 489-93.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform a full range of work at all exertional levels with various non-exertional limitations. R. 493-98. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could perform plaintiff's past janitorial work, as well as a significant number of other jobs available in the national economy. R. 499-500. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 500. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ: (1) erred in finding that he has no exertional, postural, manipulative, or hazard-based limitations; and (2) failed to properly accommodate his moderate mental limitations.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016)

## DISCUSSION

### A.    Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[4] 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id*.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it."

---

("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

[4] Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

*Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.      Analysis**

   **1.      Physical RFC**

Plaintiff argues that the case must be reversed or remanded because the ALJ improperly excluded physical restrictions from the RFC. Dkt. 9 at 8-12. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ acknowledged plaintiff's complaints of neck, back, right knee, left shoulder, and wrist pain but concluded that none of these conditions constitutes a severe impairment. R. 489-91. The Court finds no error in this assessment. Looking first to plaintiff's neck and back, the ALJ noted that plaintiff never underwent diagnostic testing of the lumbar or cervical spine, meaning there was no objective evidence of ongoing impairment. R. 489. In addition, a December 8, 2015 consultative exam with Jorge Aliaga, M.D. revealed full active range of motion, no spasm or tenderness, and negative straight leg raise tests bilaterally. R. 369, 489. Based on his evaluation, Dr. Aliaga concluded that plaintiff's history of motor vehicle injury to the spine appeared to be healed with no evidence of radiculopathy. *Id.*

Plaintiff was wearing a brace on his right knee during the December 2015 consultative exam, but x-rays of his knee were normal and he had: a normal gait and posture; no difficulty with heel-walk, toe-walk, or tandem gait; normal ability to squat, arise, sit, and stand; and normal ability to single leg balance and bear weight bilaterally. R. 364, 367, 369, 489. With respect to plaintiff's wrist, he sustained a fracture after a fall in February 2015 and received a splint. R. 338-39, 489, 913-14. Though plaintiff made subsequent complaints of pain and arthritis in his hands, Dr. Aliaga documented full grip strength of 5/5, intact ability to grasp and finger, and normal upper extremity function. R. 369, 490.

Plaintiff says Dr. Aliaga's opinion was outdated because he was unaware that plaintiff slipped and fell again in August 2016, March 2017, and August 2017. Dkt.

9 at 11-12. The August 4, 2016 fall resulted in slight swelling and tenderness in the right knee, but plaintiff had normal gait and did not require any special treatment at later appointments. R 404, 406-07, 413, 409, 413, 415, 417, 420, 425, 429. Moreover, a knee x-ray from November 2016 was normal. R. 464. Plaintiff injured his right knee and left wrist in the March 2017 fall. R. 418. He received conservative treatment consisting of pain medication, and a June 2017 MRI of the right knee was entirely normal. R. 430, 489. Finally, the August 2017 fall resulted in a right shoulder fracture requiring a sling and medication. R. 428. By December 2017, however, plaintiff was doing well with decreased pain levels, improved functioning, ability to do his activities of daily living, and improved quality of life. R. 434, 490. Perhaps most significantly, plaintiff did not receive any further medical treatment related to his physical conditions after December 2017.[5] R. 490. Despite this, a July 12, 2021 consultative exam was normal except for some mild stiffness and slightly reduced range of motion in the back. R. 950-51.

Plaintiff largely ignores this evidence and provides no explanation as to how it demonstrates that he suffers from severe physical impairments. Instead, plaintiff suggests that the ALJ failed to properly consider his reasons for not seeking additional care. Dkt. 9 at 8-9. This argument lacks merit because the ALJ expressly discussed plaintiff's loss of insurance, but also observed that he never attended the

---

[5] Plaintiff suggests that it was improper for the ALJ to consider his lack of treatment after December 2017 because his date last insured for purposes of DIB was September 30, 2017. Dkt. 9 at 8. As the Commissioner notes, however, plaintiff also applied for SSI and, in any event, bears the burden of proving that any disability continued through the date of the ALJ's decision. Dkt. 13 at 6 (citing 20 C.F.R. § 404.1512(a)).

low-cost medical clinic near his town or consulted with one of the major medical groups that accepted his medical card. R. 490. The only explanation plaintiff provided was that he preferred to see "the best provider available." R. 531. In such circumstances, the ALJ did not err in concluding that plaintiff's physical impairments are not as severe or painful as he alleges. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A] history of sporadic treatment . . . can undermine a claimant's credibility").

Plaintiff disagrees, arguing that the ALJ failed to properly consider his chronic pain syndrome, which "most often results from trauma to an extremity, and can even result from a minor injury." Dkt. 9 at 10 (citing SSR 03-2p). In plaintiff's view, the record contains "overwhelming evidence of symptoms attributable to chronic pain syndrome," likely stemming from his motor vehicle accident. *Id*. The problem for plaintiff is that he neither identifies the specific records that purportedly evidence intractable pain, nor explains how his complaints about such pain align with his ability to go without any pain medication or treatment over the course of many years after December 2017. R. 465-68. *Compare Deathra P. v. Saul*, No. 18 C 5882, 2020 WL 553705, at *8 (N.D. Ill. Feb. 4, 2020) (addressing receipt of conservative treatment, not zero treatment).

The ALJ likewise did not err in discounting the December 8, 2017 RFC assessment from Dr. Demorest. R. 465-68. Under the rules in effect when plaintiff filed his claims, a treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

Dr. Demorest opined that plaintiff: cannot walk one city block without rest or severe pain; cannot walk one block or more on rough or uneven ground; cannot climb stairs without using a handrail; can only sit, stand, and walk for about two hours in an eight-hour workday; can sit and stand for no more than 15 minutes at a time; can walk for 20 minutes at a time; must lie down for four hours in an eight-hour workday; can rarely lift up to 10 pounds; can rarely carry five pounds; can never use his left hand and arm for grasping, turning, twisting, performing fine

9

manipulations, and reaching; and can use his right hand and arm for such activities only 2% of the workday. R. 466-67.

The ALJ acknowledged that Dr. Demorest treated plaintiff monthly over a period of at least three years but found these extreme limitations unsupported by the objective evidence, including the doctor's own treatment notes. R. 496-97. For example, none of Dr. Demorest's physical exams revealed significant issues with grip strength or sensation in the upper extremities aside from a brief period in 2015 following plaintiff's left wrist fracture, and again in April 2017 when he had some mild wrist swelling and tenderness. *See, e.g.*, R. 351, 384, 390-91, 404-05, 410-11, 420. Yet Dr. Demorest found plaintiff essentially incapable of ever using either of his hands and arms. R. 497. In addition, Dr. Demorest's physical exams routinely said nothing about difficulties with sitting, standing, and walking, which contradicts his opinion that plaintiff is severely limited in all three areas. R. 351, 384, 390-91, 404-05, 410-11, 420, 497. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes").

Dr. Demorest's extreme assessment also conflicts with the findings from consultative exams performed in December 2015 and July 2021, which were largely normal. R. 367-69, 950-51. This was true even though plaintiff never received further treatment for his physical conditions after December 2017, either from Dr. Demorest or any other provider. R. 950-51. *See Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989

F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record").

It is worth noting the Commissioner's observation that despite finding no severe physical impairments, the ALJ asked the VE about jobs available to a hypothetical person with plaintiff's background and a restriction to: light work; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no working around hazards such as unprotected heights and moving dangerous machinery; frequent handling and fingering; and occasional use of foot controls with the right leg. R. 550; Dkt. 13 at 9. The VE testified (and the ALJ accepted) that such a person could perform plaintiff's past janitorial work, as well as a significant number of other jobs available in the national economy, including hotel housekeeper, sorter, and sales attendant. R. 500, 550-51. And if limited to sedentary work, the person could work as a document preparer, order clerk, and polisher. R. 552. Plaintiff generally faults the ALJ for "delet[ing] every single exertional, postural, and manipulative limitation" from the RFC, Dkt. 9 at 12, but offers no response to this evidence.

Viewing the record as a whole, the ALJ's determination that plaintiff does not have any severe physical impairments is supported by substantial evidence. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"); *Karr*, 989 F.3d at 511 (substantial evidence is "not a high threshold"). "Although plaintiff may disagree

11

with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 C 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of his physical RFC is denied.

### 2.   **Mental RFC**

Plaintiff argues that the case still requires remand because the mental RFC is insufficient to accommodate his moderate limitations in concentration, persistence, or pace ("CPP") and social interaction. Dkt. 9 at 12-16. The Court disagrees. The ALJ discussed the evidence in detail, noting that while plaintiff alleged disability beginning in 2014, he did not pursue specialized mental health treatment until August 6, 2020, when he started seeing counselor Steve Howell. At that time, plaintiff indicated that his depressive symptoms had begun just three months prior. R. 494, 815. Plaintiff did report ongoing anxiety and was admitted to Streamwood Behavioral Healthcare on September 30, 2020 with reports of hearing voices after ingesting marijuana edibles. R. 494, 808, 810. But at the time of discharge on October 6, 2020, plaintiff had no perceptual disturbances, was attentive, focused, alert, and oriented, and had intact memory with good judgment and insight. R. 494, 825. Mr. Howell saw visible improvement on October 14, 2020, R. 813, and in January 2021 plaintiff was less anxious with a normal mood and

congruent affect. R. 494, 1001. By March 2021, plaintiff presented with increasingly clear thought process. R. 494, 1007.

During the July 12, 2021 consultative exam, plaintiff had a normal orientation, appearance, behavior, memory, concentration, and ability to relate. R. 951. Plaintiff continued to exhibit a normal mood and congruent affect in October 2021. R. 1019. A few months later, on March 9, 2022, plaintiff had a psychological consultative exam with Mark B. Langgut, Ph.D. Plaintiff reported symptoms of depression and anxiety and was agitated and fidgety with a mild degree of ruminative ideation and difficulty maintaining "better than fair eye contact." R. 494-95, 1031, 1033. At the same time, he had a friendly and outgoing demeanor with intact memory, intact judgment and abstract thinking, and coherent thought process. R. 494-95, 1033.

Based on this evidence, the ALJ found that notwithstanding plaintiff's moderate mental limitations, he can learn, understand, and remember both simple and detailed work instructions and work in a routine work environment with no more than occasional changes. R. 492-93. Plaintiff can have no more than occasional interaction with the general public and coworkers and cannot perform team or tandem work. He can work with supervisors as is typical of unskilled jobs (for introduction of work, and then no more than occasional interaction with supervisors thereafter). R. 493. Plaintiff cannot work with fast-paced production or hourly timed tasks or sustain a job where a machine sets the work pace, but he can handle a moderate pace or end-of-day goals requiring only simple work-related decisions.

13

Finally, plaintiff can maintain attention and concentration for work tasks in two-hour increments throughout the typical workday, assuming typical breaks. *Id.*

Plaintiff repeatedly accuses the ALJ of cherry-picking the evidence to reach this conclusion, Dkt. 9 at 13, 14, but he does not cite any records showing greater cognitive impairment supporting additional functional restrictions. Instead, he argues generally that confining him to routine tasks with limited social interaction does not adequately capture his moderate limitations in CPP and social functioning. Dkt. 9 at 15-16 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010)). This argument overlooks the fact that the ALJ tied specific restrictions to plaintiff's unique mental deficits. For example, in recognition of plaintiff's social anxiety, the ALJ limited him to occasional interaction with the general public, co-workers, and supervisors. R. 496. The ALJ explained that she did not think greater restrictions were warranted given plaintiff's testimony at the November 2021 hearing that he had been running an antique business with his wife for six years and made deals with people, which involved talking to and negotiating with customers. R. 494, 496, 524-25. To address plaintiff's difficulties handling stress and occasional tangential thought process, moreover, the ALJ limited him to a routine work environment with no more than occasional changes, no fast-paced production requirements, and no more than simple work-related decisions. R. 496. On this record, the ALJ more than adequately built a logical bridge from the evidence to the mental RFC. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (RFC for routine tasks and limited social interactions adequately accommodated moderate

14

deficits in CPP); *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (no error where the ALJ "tailored Martin's RFC to her CPP limitations without assuming that restricting her to unskilled work would account for her mental health impairments").

Similarly unavailing is plaintiff's objection that the ALJ improperly equated his ability to perform activities of daily living with an ability to work. Dkt. 9 at 12-13. The ALJ did no such thing. She simply used plaintiff's reported activities "to assess the credibility of h[is] statements concerning the intensity, persistence, or limiting effects of h[is] symptoms consistent with the applicable rules." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); R. 492, 495. This was entirely proper.

Plaintiff argues that the RFC still cannot stand because it fails to recognize or address how chronic pain affects his ability to focus "five days per week, eight hours per day." Dkt. 9 at 14-15. In plaintiff's view, the ALJ should have given great weight to Dr. Demorest's opinion that due to his pain, he: needs unscheduled breaks twice a day lasting between 20 and 60 minutes; would be off-task more than 30% of the workday; would be absent five or more days per month; would be unable to complete a workday five or more days per month; and could efficiently perform a job less than 50% of the time. Dkt. 9 at 15; R. 467-68. As discussed, however, the ALJ reasonably determined that plaintiff's chronic pain and other physical impairments, which have not required any treatment since December 2017, are not severe and do not support any related functional restrictions. *See supra* Section B.1.

Finally, there is no merit to plaintiff's objection that the ALJ did not adequately address treatment notes reflecting that he has a distractible thought process. Dkt. 9 at 12-13. The ALJ acknowledged that Dr. Demorest observed plaintiff to be tangential and easily taken off track during appointments on November 4, 2016, January 23, 2017, and March 7, 2017. R. 411, 417, 418, 495. Yet at every other exam between July 13, 2015 and October 30, 2017, plaintiff had normal attention and concentration. R. 351, 353, 355, 382, 384, 386, 388, 390, 394, 396, 399, 402, 404, 406, 408-09, 412, 415, 423, 425, 427, 429, 431-33, 435. Plaintiff exhibited distracted concentration again in September and October 2020, R. 851, 855, but during a mental health evaluation in November 2020, plaintiff's attention span was within normal limits. R. 967. Subsequent treatment notes routinely documented a normal mood with only sporadic mention of problems with concentration. R. 495-96, 1001-27. In addition, plaintiff's mental status was normal during the July 2021 consultative exam, R. 951, and during the March 2022 consultative exam, he presented with a friendly and outgoing demeanor, intact memory, intact judgment and abstract thinking, and coherent thought process. R. 494-95, 1033. Again, plaintiff ignores this evidence and fails to explain how it supports greater functional restrictions than those found by the ALJ.

Viewing the record as a whole, the ALJ's mental RFC determination adequately accounted for plaintiff's moderate limitations in CPP and social functioning. Plaintiff's request to remand the case for further consideration of this issue is denied.

## <u>CONCLUSION</u>

For the reasons stated above, plaintiff's motion to remand the case [9] is denied, and the Commissioner's motion for summary judgment [12] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

Jeannice W. Appenteng

**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 2/19/2025

17